1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOSEPH WHITAKER,

11                 Plaintiff,                    No. 2:10-cv-1400 KJM EFB P

12          vs.

13   CHEN, et al.,

14                 Defendants.              <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16          Plaintiff is a state prisoner proceeding without counsel in a civil rights action brought

17   under 42 U.S.C. § 1983.[1]  The action proceeds on his claim that defendant Warfield was

18   deliberately indifferent to plaintiff's medical needs in violation of the Eighth Amendment when

19   she "ordered psych medication that conflicted with lithium."  Complaint (Dckt. No. 1), § IV; *see*

20   *also* Screening Order (Dckt. No. 18).[2]  Pending before the court is defendant's motion for

21   *////*

22   *////*

23   _____

24          [1] This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C.
     § 636(b)(1).

25
          [2] This action proceeds against defendant Warfield only, as defendants Chen and Jaffe
26   were previously dismissed.  *See*  Dckt. Nos. 33, 74.

                                            1

summary judgment. Dckt. No. 96.[3]  For the reasons stated below, defendant's motion should be granted.

## I.  Background

According to the complaint, defendant "ordered psych medication that conflicted with lithium," and put plaintiff in the Enhanced Outpatient Program even though she knew that plaintiff "could barely walk."  Dckt. No. 1, § IV.  Attached to the complaint are copies of medical records indicating that in mid-June of 2008, plaintiff experienced symptoms of a "medication overdose," and/or "lithium toxicity."  *See id.* at 5, 8, 9, 12, 15, 17.

Defendant's motion for summary judgment asserts that the undisputed facts show she was not deliberately indifferent to plaintiff's serious medical needs.  Dckt. No. 96.  Plaintiff filed numerous documents in response.[4]  He claims in these filings that it was defendant and/or the Interdisciplinary Treatment Team that caused plaintiff's alleged medication overdose and resulting lithium toxicity, and that defendant, as the leader of the IDTT, is liable.  *See* Dckt. No. 80 at 7; Dckt. No. 81 at 1; Dckt. No. 92 at 2.  Further, plaintiff contends that the reason defendant moved him to the Enhanced Outpatient Program was to "cover up" the alleged overdose.  Dckt. No. 80 at 4, 6; Dckt. No. 89 at 4-5.

////

////

////

---

[3] Defendant's motion, originally filed on December 19, 2011, was re-filed and re-served on August 3, 2012, in accordance with the court's August 1, 2012 order.  *See* Dckt. No. 95 (directing defendant to re-serve the motion along with the notice to plaintiff required by *Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012)).  The August 1, 2012 order informed plaintiff that if he did not file an amended opposition within thirty days of defendant re-serving the motion for summary judgment, the court would consider plaintiff's previously filed opposition in resolving defendant's motion.  Plaintiff did not file an amended opposition, and accordingly, the court considers plaintiff's previously filed opposition, and defendant's reply, in resolving the motion.

[4] *See* Dckt. Nos. 80, 81, 82, 83, 86, 89, 92.  The court has considered all of these filings in resolving the motion for summary judgment.

2

## II.    Summary Judgment Standards

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures.  Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own.  When the opposing party would have the burden of proof on a dispositive issue at trial, the moving

3

party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322.  In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine.  In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question.  Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual

1    claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

2    *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Rather, the opposing party must, by affidavit

3    or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

4    for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

5    demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

6    that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*,

7    477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

8         The court does not determine witness credibility.  It believes the opposing party's

9    evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255;

10   *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

11   proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*

12   *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J.,

13   dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts

14   at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441

15   (9th Cir. 1995).  On the other hand,"[w]here the record taken as a whole could not lead a rational

16   trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*,

17   475 U.S. at 587 (citation omitted).  In that case, the court must grant summary judgment.

18        Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

19   show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

20   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

21   'genuine issue for trial.'"  *Id.*  If the evidence presented and any reasonable inferences that might

22   be drawn from it could not support a judgment in favor of the opposing party, there is no genuine

23   issue.  *Celotex.*, 477 U.S. at 323.  Thus, Rule 56 serves to screen cases lacking any genuine

24   dispute over an issue that is determinative of the outcome of the case.

25        Concurrent with her re-filed motion for summary judgment, defendant Warfield served

26   plaintiff with a notice informing him of the requirements for opposing a motion pursuant to Rule

5

56 of the Federal Rules of Civil Procedure.[5]  *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**III.    Deliberate Indifference Standard Under the Eighth Amendment**

A prison official violates the Eighth Amendment's proscription of cruel and unusual punishment where he or she deprives a prisoner of the minimal civilized measure of life's necessities with a "sufficiently culpable state of mind."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendant possessed a sufficiently culpable state of mind.  *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991); *McKinney v. Anderson*, 959 F.2d 853, 854 (9th Cir. 1992).  A serious medical need is one that significantly affects an individual's daily activities, an injury or condition a reasonable doctor or patient would find worthy of comment or treatment, or the existence of chronic and substantial pain.  *See*, *e.g.*, *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs. v. Miller*, 104 F.2d 1133, 1136 (9th Cir.1997) (*en banc*).

Deliberate indifference may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care is provided.  *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).  To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Id.* at 847.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  *Id.* at 842.  A physician need not fail to treat an inmate altogether in order to

---

[5] *See* n.3 *supra.*

6

1  violate that inmate's Eighth Amendment rights.  *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314

2  (9th Cir. 1989).  A failure to competently treat a serious medical condition, even if some

3  treatment is prescribed, may constitute deliberate indifference in a particular case.  *Id.*  However,

4  it is important to differentiate common law negligence claims of malpractice from claims

5  predicated on violations of the Eight Amendment's prohibition of cruel and unusual punishment.

6  In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not

7  support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.

8  1980) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976); *see also Toguchi v. Chung*, 391

9  F.3d 1051, 1057 (9th Cir. 2004).  It is well established that mere differences of opinion

10 concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation.

11 *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Franklin v. Oregon*, 662 F.2d 1337, 1344

12 (9th Cir. 1981).

13 **IV.    Defendant's Statement of Undisputed Facts**

14      Defendant's statement of undisputed facts is supported by citations to plaintiff's

15 deposition testimony, exhibits to plaintiff's complaint, defendant's sworn declaration, and

16 plaintiff's medical records.  The evidence submitted by defendant establishes the following.

17      As of January 2008, plaintiff had been diagnosed with bipolar disorder, schizophrenia,

18 and psychotic disorder.  Dckt. No. 96, Def.'s Stmt. of Undisp. Facts ("DUF") 57.

19      Between January 2008 and June 2008, defendant was employed by the California

20 Department of Corrections and Rehabilitation (CDCR) as a Staff Psychologist and assigned to

21 the Correctional Clinical Case Management System (CCCMS) outpatient level-of-care, where

22 she served as plaintiff's primary clinician and case manager.  DUF 32, 33.  As a psychologist,

23 she could not prescribe medication, nor could she adjust dosages of medication prescribed to an

24 inmate.  DUF 90.

25      The Enhanced Outpatient Program (EOP) provides a more intensive level of outpatient

26 mental health care than the CCCMS.  DUF 12.  Referrals to higher levels of care must be

7

considered when an inmate's clinical condition worsens or when an inmate is not benefitting

from treatment services available at the current level.  DUF 27.  To be placed into the EOP,  the

Interdisciplinary Treatment Team (IDTT) must approve the transfer.  DUF 30.  The IDTT is

composed of the assigned primary clinician, psychiatrist, correctional counselor, and the inmate.

DUF 17.

On June 9, 2008, defendant led an IDTT meeting for plaintiff, which also included

psychiatrist R. Tan and a counselor.  DUF 70.  Defendant reported that custody staff had told her

that plaintiff had appeared to be decompensating, and therefore, she had been making more

frequent contact with plaintiff as his case manager.  DUF 74, Ex. B (June 9, 2008 Mental Health

Treatment Plan).  The IDTT agreed that a change to the EOP level of care would be appropriate

if plaintiff's behavior worsened during the following week.  DUF 75, Ex. B (June 9, 2008

Mental Health Treatment Plan).

On June 17, 2008, custody and medical staff informed defendant that plaintiff had

appeared more lethargic after medication was distributed during the evening of June 16, 2008,

and that he had been observed as acting agitated towards staff.   DUF 77, Ex. B (June 16, 2008

Health Care Services Request Form).  Defendant talked to plaintiff about his behavior, and he

refused to tell her if he was taking his medication as prescribed.  DUF 78, 81.  Defendant told

plaintiff that because of his behavior, he would be transferred to the EOP so that he could be

observed more closely and to ensure medication compliance.  DUF 81.

It was not clinically appropriate to leave plaintiff in the CCCMS setting because custody

staff had reported that plaintiff appeared "drugged," and defendant could not determine if

plaintiff was taking his medication.  DUF 86.  If plaintiff was not taking his medication, he could

have become a danger to himself or others.  DUF 87.  Thus, it was clinically necessary for

plaintiff to be placed in an outpatient setting where his medication and behavior could be more

closely monitored.  DUF 88.  Any harm that plaintiff faced by being classified as having

sensitive needs was outweighed by his observed deteriorating psychiatric condition, which

1  required him to be monitored more closely than what was provided in the general population

2  CCCMS setting.  DUF 89.

3  **V.    Discussion**

4          Defendant argues that the undisputed facts show that she was not deliberately indifferent

5  to plaintiff's serious medical needs and therefore did not violate his Eighth Amendment rights.

6  Specifically, defendant argues that she could not have caused plaintiff's alleged adverse reaction

7  to his medication because she, as a psychologist, could not prescribe or adjust plaintiff's

8  medications.  She also argues that plaintiff needed closer observation at the EOP level of care

9  because custody staff had reported that plaintiff had been acting agitated and drugged, and she

10  could not verify that plaintiff was taking his medication.  She contends that plaintiff's

11  disagreement with the decision to refer him to the EOP level of care does not give rise to an

12  Eighth Amendment violation.  *See* Dckt. No. 96, Def.'s P. & A. at 13-15.

13          In opposition, plaintiff points to the medical records attached as exhibits to his complaint.

14  Those records reveal that he may have suffered from a medication overdose and/or lithium

15  toxicity on or around June 16, 2008.[6]  Dckt. No. 80 at 5-6; Dckt. No. 83 at 2; Dckt. No. 1 at 5, 8,

16  9, 12, 13, 15, 17.  Plaintiff argues that Dr. Tan, the defendant, and the IDTT gave him too much

17  lithium.  He contends that defendant, as leader of the IDTT, is liable for Dr. Tan's acts and the

18  acts of the IDTT.  Dckt. No. 83 at 1; Dckt. No. 86 at 1; Dckt. No. 92 at 2, 3 (arguing for liability

19  based on a theory of respondeat superior).  Plaintiff also argues that "it really makes no

20  difference who ordered the psych meds all that matters [is] that IDTT members conspir[ed] to

21  cover up a misused abuse of psych meds . . . ."  Dckt. No. 89 at 5.  But the complaint does not

22  allege that Warfield had any involvement in such a "cover up." It alleges a deliberate

23  indifference to serious medical needs from the "order[ing of] psych medication that conflicted

24  _____

25          [6] The court previously overruled defendant's objection to the medical records attached to
    the complaint.  *See* Dckt. No. 98 at 7 n.3 ("there does not appear to be any genuine dispute as to
26  the accuracy of the evidence submitted, and defendant's objection to the evidence is overruled").

1    with lithium."[7]  Dckt. No. 1.  Yet defendant's evidence shows that she had no control over

2    plaintiff's medication.  She could not prescribe or adjust plaintiff's medications, and thus, was

3    not responsible for any adverse reaction to medication or medication overdose experienced by

4    plaintiff.  DUF 90.  Her evidence also shows that she referred plaintiff to the EOP after

5    determining that plaintiff should be monitored more closely based upon her own and other staff

6    members' observations of plaintiff's deteriorating psychiatric condition, and after being unable

7    to determine whether plaintiff was taking his medication as prescribed.  Rather than

8    demonstrating indifference, that evidence suggests that Warfield and the other staff were very

9    much attentive to plaintiff's medical needs.  On these facts, no reasonable juror could find that

10   defendant treated plaintiff with deliberate indifference.

11        Plaintiff has not presented any evidence upon which a reasonable jury could conclude

12   that defendant Warfield, with deliberate indifference to the consequences, ordered plaintiff to

13   receive psychiatric medication that conflicts with lithium.  Though plaintiff argues that

14   defendant should nevertheless be liable because of her leadership role on the IDTT, plaintiff fails

15   to submit evidence to support this theory of liability.  *See Starr v. Baca*, 652 F.3d 1202, 1207

16   (9th Cir. 2011) (requiring defendant's "personal involvement in the constitutional deprivation,"

17   or "a sufficient causal connection between the [defendant]'s wrongful conduct and the

18   constitutional violation.").  Here, plaintiff has not come forward with any evidence

19   demonstrating that defendant was personally involved in managing plaintiff's medication dosage

20   levels or otherwise caused plaintiff to experience a medication overdose.

21        Plaintiff's opposition also argues that the real reason defendant referred him to the EOP

22   was to cover up the lithium overdose and to place the blame for the overdose on EOP medical

23   staff.  Dckt. No. 80 at 4, 6; Dckt. No. 92 at 3.  He argues that defendant lied "about taking any

24   _____

25       [7] Plaintiff's opposition attempts to introduce a new theory of deliberate indifference
     predicated on a claim that the team for which Warfield was responsible deliberately and with
     indifference to the consequences overdosed plaintiff with lithium and then conspired to cover up
26   that fact.

1   psychiatric medications,"[8] and that the reason Warfield referred plaintiff to the EOP was because

2   of staff comments that he was "acting drugged."  Dckt. No. 81 at 1.  Rather than undermining

3   Warfield's explanation, this assertion simply supports the concerns that Warfield articulated as

4   the basis for the referral; i.e., reports by custody and medical staff that plaintiff appeared more

5   lethargic after the distribution of medication on the evening of June 16, 2008.  DUF 77, Ex B.

6       In response to defendant's evidence that plaintiff had been decompensating as of June 9,

7   2008, plaintiff simply asserts that there is "no proof" of that.  Dckt. No. 82 at 1.  But plaintiff

8   himself submits evidence that on June 9, 2008, medical staff noted that he "appear[ed] to be

9   decompensating" and may "change to EOP level of care if [he] gets worse over next week."

10  Dckt. No. 83, Ex. A (June 9, 2008 Mental Health Treatment Plan).  This evidence does, indeed,

11  document that plaintiff was decompensating at the time and undermines plaintiff's argument that

12  his placement in the EOP was done to "cover up" a medication overdose that happened on or

13  around June 16, 2008.

14      In another unsworn filing, plaintiff claims that by referring him to the EOP, he was

15  removed from the special needs yard and placed in the EOP general population.  Dckt. No. 80 at

16  4, 6.  He contends that EOP and general population inmates have a history of attacking special

17  needs inmates and that defendant knew this.  Dckt. No. 83 at 3.  While there is no dispute that

18  plaintiff is unhappy with the decision to refer him to the EOP, plaintiff has not presented

19  evidence that could support a verdict in his favor that he was, through defendant's acts of

20  deliberate indifference, over-medicated with lithium or medicated with a drug that was

21  contraindicated due to his use of lithium.  Assuming an overdose occurred, plaintiff does not

22

23      [8] Plaintiff's claim that defendant lied about asking plaintiff if he had been taking his
    medications on June 17, 2008 does not create a genuine dispute over a material issue of fact.
    First, he makes this assertion in his unsworn opposition brief which is not sufficient to create a

24  genuine dispute.  *See* Dckt. No. 81.  But more importantly, even if the contention were presented
    in a sworn affidavit, the dispute is immaterial.  The reports of staff observations and the concerns

25  about whether plaintiff was or was not taking his medication as prescribed as the basis for the
    referral remain unrefuted.  Plaintiff does not rebut defendant's evidence that she referred plaintiff

26  to the EOP because his behavior required closer monitoring.

1   submit any evidence demonstrating that defendant controlled or was responsible for managing

2   plaintiff's medication dosage levels, or that she was even aware of any circumstances from

3   which she could draw the inference that plaintiff would experience a medication overdose or

4   adverse reaction.  Moreover, defendant's evidence shows that because of plaintiff's deteriorating

5   psychiatric condition, it was clinically necessary to refer him to the EOP where his medication

6   and behavior could be more closely monitored.  Defendant's evidence also shows that any harm

7   that plaintiff faced by being classified as having sensitive needs was outweighed by his need for

8   closer observation.

9          Thus, plaintiff fails to submit any evidence demonstrating that defendant chose a course

10  of treatment that "was medically unacceptable under the circumstances" or that defendant chose

11  the "course in conscious disregard of an excessive risk to plaintiff's health."  *See Jackson*, 90

12  F.3d at 332; *Farmer*, 511 U.S. at 835 (deliberate indifference requires subjective recklessness);

13  *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002) (to know of the excessive risk,

14  defendant must actually draw the inference that a substantial risk of serious harm exists).  Simply

15  put, there is no evidence that defendant's endorsement of plaintiff to the EOP level-of-care was

16  not clinically indicated, or that it otherwise violated the Eighth Amendment.  Plaintiff's

17  disagreement with defendant's decision amounts to nothing more than a difference of opinion

18  regarding proper medical care, and does not amount to deliberate indifference.  *See Sanchez v.*

19  *Vild*, 891 F.2d 240, 242 (9th Cir 1989).

20  **VI.    Conclusion**

21         Accordingly, plaintiff has failed to demonstrate a genuine dispute of material fact and

22  summary judgment in favor of defendant is appropriate.[9]

23  ////

24  ////

25

26         [9] Because the court finds that defendant is entitled to summary judgment on this ground, it need not address defendant's argument for qualified immunity.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Defendant's motion for summary judgment (Dckt. No. 96) be granted;

2.  The Clerk be directed to enter judgment in defendant's favor; and

3.  The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 10, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

13